IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARY ZELNIK,
    Plaintiff,

vs.

    Case No. C2-03-1098
    Judge Edmund A. Sargus, Jr.
    Magistrate Judge Terence P. Kemp

CB RICHARD ELLIS, INC.,
    Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant CB Richard Ellis, Inc.'s Motion for Summary Judgment. Defendant asserts that no genuine issue of material fact remain for trial on each of Plaintiff Mary Zelnik's three employment discrimination claims. Plaintiff opposes the Defendant's Motion. For the reasons that follow, Defendant's Motion for Summary Judgment is granted.

### I.

CB Richard Ellis, Inc. ("CBRE") operates as a real-estate services company. In its Columbus, Ohio office, CBRE offers asset services which are designed to assist commercial, retail or industrial property owners with a variety of functions to manage and enhance their real-estate investments. Asset services are primarily provided to real-estate owners through the coordination of property managers.

In 1994, the Ohio Police and Fire Pension Fund ("OP&F") purchased property, including a fifteen-story building, a five-story garage and adjacent grounds located at 140 East Town Center, for use as its organization's headquarters ("Town Center"). OP&F moved into the Town Center

building in June, 1995. Because OP&F did not have property management experience, the group hired the asset management firm Lend Lease to supervise the development and marketing of the property. After working with other firms, Lend Lease contracted with CBRE in October, 1997 as the property management firm to assist in day-to-day business operations.

When CBRE received the contract, Gail Simone, an employee with another contractor, was the current property manager at Town Center. OP&F was pleased with the quality of Ms. Simone's management. CBRE thus hired Ms. Simone to stay on at Town Center as property manager.

In 2001, CBRE lost its property manager at the National City Bank Building in Columbus. CBRE offered the position at the National City Bank Building to Ms. Simone, which she accepted. Ms. Simone managed both the National City Bank Building and Town Center until CBRE could find a replacement at Town Center. Ms. Simone, together with Charles Manofsky, Director of Asset Services for CBRE, interviewed candidates for Ms. Simone's replacement. Mr. Brian Lanz from Lend Lease also interviewed final candidates.

Plaintiff, Mary Zelnik, is a female over the age of forty. Plaintiff was hired for the position of Property Manager at the Town Center after interviews with Simone, Manofsky and Lanz. During the interviews, Manofsky and Lanz explained to Plaintiff the duties involved in managing Town Center and the requirement that she be on premises with a very demanding client that had high expectations. Plaintiff began her employment with CBRE on August 28, 2001.

When Plaintiff began her employment, she had difficulty with her first task of preparing a 2002 budget for the property at Town Center. Lanz found errors and omissions in Plaintiff's budgeting and financial reports. In August 2002, Plaintiff failed to complete a five-year capital budget for Lanz in time for his trip to Columbus, during which he expected to review the budget.

-2-

In addition, Lanz believed that Plaintiff did not effectively communicate with him. For instance, Lanz learned that executives at Lend Lease and OP&F had complaints regarding the property and the Plaintiff failed to advise him of these issues. Lanz therefore criticized Plaintiff for failing to keep him apprised of OP&F's complaints as they arose.

Further, Mr. Estabrook, Executive Director of OP&F, had criticisms of Plaintiff's management of the building. He complained that Plaintiff did not keep the building clean enough and that Plaintiff was not visible enough to the tenants. Estabrook contended that Plaintiff did not conduct building walk-throughs or tenant visits. Estabrook also complained that Plaintiff mishandled a construction project involving the parking garage which left numerous tenants without parking for over a month.[1]

In September, 2002, Estabrook contacted Lanz to discuss his concerns and requested that Plaintiff be replaced. Estabrook emphasized that if CBRE would not replace Plaintiff, OP&F would find another property management firm.

---

[1] Plaintiff avers in her affidavit that she received high performance reviews while she was employed by CBRE. (Pl's Aff., ¶ 28.) Although she attached copies of her performance evaluations to her affidavit, these documents are not authenticated and are not proper evidence under Fed. R. Civ. P. 56(e). Furthermore, Defendant objects to the documents because they were not produced during discovery, despite Plaintiff's sworn testimony that she had produced all materials relevant to her claims. As such, the Court will not consider them.

Further, Plaintiff's affidavit contains statements that are inconsistent with her deposition testimony. For example, Plaintiff avers in her affidavit that she was never informed of any performance problems and that Monofsky always gave her reviews in which he said her work was fine. (Pl's Aff., ¶¶ 26-30.) By contrast, in her deposition, Plaintiff indicated that she had difficulties with her job and that Monofsky counseled her on several occasions about the requirement to be more attentive to tenant needs. Plaintiff may not create issues of fact with self-serving statements in her affidavit that are inconsistent with her deposition testimony. *E.g., Gange v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315 (6th Cir. 1989).

In the beginning of September, 2002, Plaintiff learned through her physician that she would require surgery for a hysterectomy. At the request of the Plaintiff, CBRE granted medical leave without any questions. Plaintiff delayed her surgery for approximately one month in order to finish the annual budget for the property.

Approximately one week before she was to begin her medical leave, Manofsky informed Plaintiff that she would be removed from her management position at Town Center. Manofsky explained to Plaintiff that the action was being taken at the express request of Estabrook. Plaintiff was also informed that, at the time, no other positions were available to which Plaintiff could be reassigned. As a result, Manofsky informed Plaintiff that she would be temporarily transferred to main office.

On September 23, 2002, while Plaintiff was on medical leave, CBRE returned Ms. Simone to manage the Town Center property. Although Lanz considered hiring another candidate, Estabrook specifically requested that Simone return to the Town Center based on her demonstrated success there. Simone handled both the Town Center property as well as the National City property through the termination of the National City account at the end of December 2002.

Plaintiff returned from medical leave on December 2, 2003[2] and was informed that day of her termination from her position at CBRE. CBRE explained that no other property management positions were available to which she could be transferred.

Simone was 39 years old at the time of Plaintiff's termination. Plaintiff was 43 years old.

---

[2] The parties dispute the date on which Plaintiff returned to work. Plaintiff alleges that she returned on December 3, 2002 while CBRE's records reflect that she returned on December 2, 2002. The dispute, however, is not material to the relevant issues in this case.

Following her termination, Plaintiff filed a complaint on October 10, 2003 against CBRE in the Court of Common Pleas of Franklin County, Ohio alleging discriminatory discharge on the basis of her age and sex in violation of Ohio Revised Code § 4112.02 and in violation of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Pursuant to 28 U.S.C. § 1441(a), Defendant, a Delaware corporation with its principal place of business in California, timely removed the action to this Court asserting both federal question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332.

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Moore v. Philip Morris Cos.*, 8F3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be presented in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970);

*see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest on mere allegations... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.56(e); *Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

Plaintiff alleges that Defendant-CBRE willfully discriminated against by terminating her because of her age, sex and the exercise of her rights under the FMLA. Defendant moves this Court for summary judgment on each of these claims.[3]

**A.   Age Discrimination**

Defendant CBRE maintains that Plaintiff's age discrimination claim is barred by the applicable statute of limitations. Plaintiff did not respond to CBRE's Motion with respect to its

---

[3] Plaintiff's Memorandum in Opposition also discusses a tort claim for wrongful termination in violation of public policy. Plaintiff's Complaint contains no such allegation and she at no time prior to her Memorandum in Opposition ever mentioned the public policy claim. The Court, therefore, does not consider Plaintiff's discussion of the legal contours of such a claim, but would note that Plaintiff provided no more than the elements of the case without putting forth any evidence or facts to support them.

argument that her age claim is time-barred.

Indeed, Plaintiff alleges that CBRE terminated her employment because of her age in violation of Ohio Rev. Code § 4112.02. Section 4112.02(N) provides that "[a]n aggrieved individual may enforce the individual's rights relative to the basis of age as provided in this section by instituting a civil action, within one hundred eighty days after the alleged unlawful discriminatory practice occurred . . . ." Ohio Revised Code § 4112.02(N). Thus, age discrimination claims brought pursuant to Ohio Revised Code § 4112 must be initiated within 180 days or shall be dismissed as time barred. *See Oker v. Ameritech Corp.*, 89 Ohio St. 3d 223, 224, 729 N.E.2d 1177, 1179 (Ohio 1995)(holding that statute of limitations period applicable to age-discrimination claims begins to run on the date of the employee-plaintiff's termination from the defendant-employer, citing Ohio Rev. Code § 4112.02(N)).

Plaintiff was informed of her termination by Defendant on December 3, 2002, and that the termination would become effective January 2, 2003. Plaintiff filed her Complaint on October 10, 2003. Over nine months passed before Plaintiff filed her Complaint. Because the Plaintiff failed to file her claim of age discrimination against the Defendant within the 180 days of the alleged wrongful termination, Defendant's Motion for Summary Judgment is **GRANTED** with respect to this claim.

**B.     Sex Discrimination**

Plaintiff also alleges that CBRE terminated her employment because of her sex in violation of Ohio Revised Code § 4112.02. CBRE maintains that Plaintiff's sex discrimination claim fails as a matter of law because she cannot establish a *prima facie* case and, regardless, cannot show that CBRE's articulated, legitimate reason for the termination is pretextual. Again, other than to state

the law as it relates to the claim, Plaintiff did not come forward with evidence or otherwise respond to CBRE's Motion for Summary Judgment on her sex-based discrimination claim.

In order for an employee to establish a *prima facie* case of discrimination, employee must prove that she was (1) a member of a protected class; (2) that she was terminated; (3) that she was qualified for her position; and (4) that she was replaced by a person outside of the protected class. *Mumaw v. Dollar General Corp.*, 19 F. Supp. 2d 786 (S.D. Ohio 1998).

Here, Plaintiff has failed to establish a *prima facie* case of sex discrimination because she has not demonstrated that she was replaced by someone outside of the protected class or that a comparable non-protected person was treated better. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). It is undisputed that Plaintiff was replaced as property manager for the Town Center property by Gail Simone, another female, and therefore a member of the Plaintiff's protected class.

Because the Plaintiff has failed to demonstrate an essential element of her case of sex-based discrimination, Defendant's Motion for Summary Judgment on this claim is hereby **GRANTED**.

C.   **FMLA Retaliation Claim**

Plaintiff's final claim is that she was wrongfully terminated from her position by Defendant because she exercised her rights guaranteed to her under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* In particular, as set forth in her Complaint, Plaintiff alleges that CBRE terminated her employment "because its clients were unhappy that [she] took FMLA leave [and] Defendant violated the . . . [FMLA] by terminating Plaintiff's employment after return of said leave." (Complaint, ¶¶ 19-20.).

Plaintiff claims that Defendant violated the FMLA because it terminated her in retaliation for her exercising the privileges guaranteed to her under the FMLA.[4] In examining retaliation claims, the Court utilizes a burden-shifting analysis in which the burden of proof shifts from the employee to the employer and back to the employee as each establishes his or her case and the counter arguments of it. The employee has the initial burden of demonstrating the employer's discriminatory intent.

To survive CBRE's motion for summary judgment, Plaintiff must provide sufficient evidence to show that the exercise of her FMLA rights was a motivating factor in her discharge. *Gibson v. City of Louisville*, 336 F.3d 511, 514 (6th Cir. 2003). In cases such as this one, where there is no direct evidence of retaliation, this Court applies the familiar *McDonnell Douglas* v. *Green*, 411 U.S. 792, (1973), burden-shifting scheme, which requires that the plaintiff first make a *prima facie* case of retaliation. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). To establish a *prima facie* case, Plaintiff must show: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action. *Id.*

---

[4] Plaintiff's Memorandum in Opposition causes some confusion as to the basis of Plaintiff's FMLA claim. At times, Plaintiff argues that the fact she was not reinstated to her property management position after her medical leave is conclusive evidence of an FMLA violation. While not ruling on the validity of this argument, the Court notes, however, that Plaintiff has only alleged that CBRE retaliated against her for taking her FMLA leave.

A plaintiff may pursue two theories of recovery under FMLA: entitlement/interference claims arising under 29 U.S.C. §§ 2614(a)(1) and 2615(a)(1); and retaliation/discrimination claims arising under 29 U.S.C. § 2615(a)(2). *See Arban v. West Publ'g Corp.*, 345 F.3d 290, 400-01 (6th Cir. 2003); 29 C.F.R. § 825.220. In her Complaint, Plaintiff specifically alleges that CBRE terminated her in retaliation for her use of leave. Further, Plaintiff testified in her deposition that CBRE freely granted her request for FMLA leave and no one from the company in any way interfered with her right to take leave. (Pl. Dep., at p. 250.)

Under the FMLA, an eligible employee is entitled to as many as twelve weeks during any twelve-month period for an "employee's serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). The parties do not dispute that Plaintiff was entitled to and took time off for her surgery under the FMLA or that she engaged in statutorily protected activity. Furthermore, the parties do not dispute that Plaintiff was terminated, thus establishing the second element of her *prima facie* case with respect to adverse employment action.

Defendant-CBRE maintains that Plaintiff cannot establish a that there was a causal relationship between exercising her right to take leave under the FMLA and her termination. The Court agrees that Plaintiff cannot demonstrate that her termination took place as a result of or in response to her FMLA leave of absence. In this case, the records reflects that Plaintiff had been criticized prior to her leave regarding her property-management methods of Town Center. Estabrook complained throughout the course of Plaintiff's employment and, in the end, demanded that she be replaced or CBRE would lose its contract. These criticisms eventually led to her termination. Although proximity in time may give rise to an inference of causation for purposes of establishing a *prima facie* case of retaliatory discharge, s*ee Skrjanc*, 272 F.3d at 314, here no such inference may be derived because all of these events culminated prior to Plaintiff's leave. Because Plaintiff cannot establish that the decision to terminate her was the result of, or even influenced by the fact that she took FMLA leave, she has failed to demonstrate causal connection, a required element of her FMLA retaliation claim. For these reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

Even if Plaintiff had established a *prima facie* case of retaliation under the FMLA, CBRE has articulated a legitimate, nondiscriminatory reason for her termination which Plaintiff cannot

show is a pretext for discrimination. CBRE indicates that it terminated Plaintiff due to complaints and the request for her replacement made by CBRE clients. CBRE has adduced evidence that OP&F experienced continuous problem's with Plaintiff's performance. CBRE terminated her employment because it had no other property available for her to manage after she lost the assignment at Town Center for which she was hired. These are legitimate, nondiscriminatory reasons for Plaintiff's discharge. *See Timmon v. Servicemaster Co.*, No. 96-1655, 1997 U.S. App. LEXIS 13703, at *4-*5 (6th Cir. June 5, 1997)(upholding as a legitimate nondiscriminatory reason for plaintiff's termination the defendants' assertion that plaintiff cause clients to cancel their accounts).

Plaintiff has failed to demonstrate that these reasons are pretextual. Plaintiff may attempt to establish that CBRE's reasons for discharge were pretextual by showing that the reasons given have no basis in fact, did not motivate the discharge, or were insufficient to warrant discharge. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003). Plaintiff may also meet her burden by showing that CBRE's reasons for discharge were not credible. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002).

Plaintiff has not come forward with any evidence to create a genuine issue of material fact as to whether CBRE's reasons for her termination were a pretext for unlawful discrimination. Plaintiff has not challenged that the stated reasons actually occurred; she admits that CBRE's clients had problems with her work performance and complained about her. Moreover, she admits that no properties were available when she returned from leave. Plaintiff nonetheless argues the facts that, (1) prior to her termination, she had never been the subject of any disciplinary action; and (2) her supervisor indicated that she would be assigned a new property if one was available make the entire process of her termination highly suspicious such that the true reason must be discriminatory animus.

First, Plaintiff may not have been subjected to formal disciplinary proceedings prior to her leave of absence, but she was aware that she had been removed from Town Center because of client concerns about her work performance. Moreover, Plaintiff has not produced evidence that CBRE's policies required it to formally reprimand her prior to discharge. Plaintiff has wholly failed to present evidence beyond her mere perceptions to challenge CBRE's assertion that it terminated her because it did not have confidence in her ability to manage the Town Center property effectively and that no other properties were available to which she could be transferred.

This Court does not lightly grant summary judgment against a plaintiff who was discharged immediately following a return from FMLA leave. In this case, however, the Defendant has pointed to serious performance deficiencies wholly independent of the medical leave. Significantly, these deficiencies have not been called into question by the Plaintiff sufficient to create a genuine issue of material fact.

For these reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

### IV.

For the foregoing reasons, CBRE's Motion for Summary Judgment (Doc.15) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant and to remove this case from the Court's pending cases and motions list.

**IT IS SO ORDERED.**

_9-9-2005_
**DATED**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE